The State of Ohio, Appellee, *v.* Reese et al., Appellants.

(No. 6816—Decided May 22, 1962.)

*Mr. Earl W. Allison,* prosecuting attorney, and *Mr. David E. Tingley,* for appellee.

*Mr. Philip R. Bradley* and *Mr. M. Claude Sharf,* for appellant Julius Reese.

Duffey, P. J. Appellant Julius Reese, herein called appellant, was indicted and convicted of armed robbery in the Franklin County Common Pleas Court.

In this appeal, appellant has assigned five errors. As to the first, second, fourth, and fifth assignments, we find no prejudicial error. The third assignment concerns the exclusion of evidence offered to impeach the testimony of a codefendant, Cretta Reese.

Over appellant Julius Reese's objection, he and his sister-in-law, Cretta Reese, were tried jointly. The prosecution's case

rested on the testimony of the alleged victim and two police officers. Both officers testified to statements allegedly made by Cretta which implicated the appellant. Upon taking the stand in her own defense, Cretta directly implicated the appellant, her testimony being in effect that appellant had forced her to commit the alleged robbery. Cretta was cross-examined by Mr. Bradley, the appellant's attorney. Cretta's counsel was William Lynch. The record shows the following:

"Q. Have you ever been convicted of a crime?

"Mr. Lynch: I object.

"The Court: She may answer that.

"Mr. Lynch: Note an exception.

"The Witness: No.

"The Court: Mrs. Reese, speak a little louder. I am sure the jurors are having a hard time hearing you, a number of them, because I have good ears and I have trouble hearing you. Speak right up.

"Q. So as to be certain now, I asked you if you had ever been convicted of a crime and you said no; is that right? A. That is right.

"Mr. Lynch: Would you want to explain what a crime means there?

"The Court: No, I don't think he need explain that."

In presenting his defense, appellant proffered the testimony of the Franklin County Clerk of Courts, to prove that Cretta Reese had been found guilty in Franklin County of the crime of assault and battery. This witness' testimony was excluded by the trial judge over appellant's objection. When appellant's counsel protested that he had asked Cretta whether she had been convicted of a crime, the court commented: "How did she know that was a crime?" We assume, as we think we must, that the proof would have been by whom and just exactly what the proffer says it would be.

It would appear that the trial court had in mind the rule limiting cross-examination to *crimen falsi*. However, just a week previous to the trial of this case, the Supreme Court decided *State* v. *Murdock* (1961), 172 Ohio St., 221.

In the *Murdock case* the second paragraph of the syllabus states that an offense under state laws may be shown for the purpose of affecting credibility. It approved and followed the

case of *Harper* v. *State* (1922), 106 Ohio St., 481. In *Harper*, the fifth paragraph of the syllabus states that such inquiries are not collateral, "but directly affect the credibility of the witness."

Considering the vast scope of state regulatory law, and the appendage of criminal liability to almost all of it, it may be doubted that every conviction under any state law can be said to affect credibility, and further that if it does, that the effect is direct. However, as we read the *Murdock case*, that position is no longer open to us.

As to the sufficiency of the questions asked as a foundation for impeachment by proof of conviction, the area here should be distinguished from the foundation necessary to prove prior inconsistent statements. In some states, proof of conviction is proper without any prior foundation. 98 Corpus Juris Secundum, Witnesses, Section 518. However, a general question as to conviction is proper and it is not necessary to specify a particular crime. *State* v. *Baldridge* (1956), 75 Ohio Law Abs., 549; *State* v. *Carter* (1944), 75 Ohio App., 545; 42 Ohio Jurisprudence, Witnesses, Section 358; 58 American Jurisprudence, Witnesses, Section 750; 98 Corpus Juris Secundum, Witnesses, Sections 515 and 528.

The prosecution argues that its case for appellant's guilt rests on the theory of his participation in a robbery, that Cretta's testimony is relevant only to her personal defense of forced participation and that, therefore, the exclusion was nonprejudicial. While ingenious, this proposition cannot be accepted. If appellant's testimony were to be fully believed, the jury could have found him innocent of armed robbery. Its implausibility is not a matter that this court, or the trial judge, can determine. Cretta Reese's testimony, and the statements attributed to her by other witnesses, strongly corroborate the testimony of the prosecution's chief witness and thereby affect the weight and acceptability of the appellant's testimony. To affirm the judgment of the trial court here would be analogous to holding that the exclusion was nonprejudicial because on the weight of the evidence the appellant is guilty. This would be a substitution of this court's opinion for that of the jury in a criminal case.

Further, and more fundamentally, appellant has a right to a fair trial. That right necessarily comprehends the opportun-

ity to present to the jury all the legally admissible evidence, both that directly on the merits and that bearing directly on the credibility of adverse evidence. In criminal cases that right must be zealously protected. The probable guilt of a defendant cannot be used to obscure his right to present his case and have it decided by a jury on all the evidence. The evidence offered here was not cumulative, and the witness was an important one.

The judgment of the Common Pleas Court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed.*

DUFFY, J., concurs.

BRYANT, J., dissenting in part. I concur in the conclusions reached by the other two members of this court in deciding that the first, second, fourth and fifth errors assigned are not well taken. However, I must dissent from their decision that the third error assigned is well taken. This claimed error reads as follows:

"The trial court erred in failing and refusing to allow defendant-appellant to introduce evidence and testimony of witnesses for the purpose of impeaching the credibility of the codefendant, Cretta Reese."

The testimony of three witnesses is referred to in the brief on behalf of the appellant Julius Reese. The witnesses, whose testimony was rejected, were as follows: (a) the Clerk of Courts of Franklin County, (b) the Superintendent of the Columbus State Hospital, and (c) the Clerk of the Probate Court of Franklin County, Ohio.

The contention on behalf of Julius, as set forth in appellant's brief, is as follows:

"The codefendant, Cretta Reese, made certain statements on the witness stand during the course of trial, and statements prior to trial to the police, which would tend to implicate the defendant-appellant herein. Cretta Reese based her defense on coercion and force allegedly used by the Defendant-Appellant, to force her to commit the crime of armed robbery. As a consequence, she became, in effect, a witness against the Defendant-Appellant, and as such, placed the credibility of her testi-

mony in issue, and the Defendant-Appellant had every right to impeach the credibility of this testimony if possible.

"At one point, Cretta Reese, was asked, upon cross-examination by the Defendant-Appellant's counsel, if she had ever been convicted of a crime (R-91-92) and she answered 'No,' whereupon counsel for Cretta Reese asked 'Would you want to explain what a crime means there?' (R-91) and the trial court interposed 'No, I don't think he need explain that.' Later, during the presentation of evidence and testimony on behalf of Defendant-Appellant, the Trial Court would not permit the Clerk of the Court of Common Pleas of Franklin County to testify in response to subpoena duces tecum, regarding Cretta Reese's prior conviction of a crime, which she has previously denied, stating 'How did she know that was a crime.' (R-120), having stated earlier to the effect that the meaning of a crime didn't need to be explained to Cretta Reese.

"The Trial Court further erred in refusing to allow the testimony of Dr. Lowell Dillon, Superintendent of the Columbus State Hospital, (R-116, 117) regarding the fact that Cretta Reese had been an inmate of the Columbus State Hospital and that she had shown a penchant for the use of sharp instruments (remembering that the weapon involved was a butcher knife); that she had attempted suicide and that she had been diagnosed as a schizoid personality, all of which would tend to affect the credibility of her testimony. (R-117-118)

"The Trial Court further erred in refusing to permit the Clerk of the Probate Court of Franklin County to testify regarding the incarceration of Cretta Reese in the Columbus State Hospital. (R-119)"

It must be remembered that Cretta Reese was a defendant on trial charged with a felony and that she had rights which had to be protected by the trial court, as well as the rights of Julius Reese. It would not have been proper on the part of the trial court to permit the introduction of evidence of another offense allegedly committed by Cretta for the purpose of proving that she was guilty of robbery. In the case now before us, the sole ground upon which a previous conviction of crime, whether misdemeanor or felony, is admissible is to reflect on the credibility and worthiness of belief of Cretta as a witness.

Counsel for Julius Reese relies upon the case of *State* v.

*Murdock* (1961), 172 Ohio St., 221, citing, approving and following *Harper* v. *State* (1922), 106 Ohio St., 481, holding that a defendant in a criminal prosecution may be cross-examined as to former convictions under state or federal laws. But the cases dealt with and upheld the right of counsel for the state to make inquiry of a defendant as to specific previous convictions of violations of state or federal laws, and neither case decided the respective rights of co-defendants to interrogate the other with reference to previous convictions.

The cases cited, therefore, clearly are not in point here for the reason, among others, that here the court did allow the question as to previous convictions to be asked and it was answered.

So far as the testimony sought from the Superintendent of the Columbus State Hospital as to conduct and details of the care of Cretta Reese during her stay in the state mental institution is concerned, this evidence was clearly incompetent, and the trial court properly rejected it. The same is true with reference to testimony sought to be elicited from the Clerk of the Probate Court as to alleged occurrences brought out at a hearing involving Cretta alleged to have been conducted by the Probate Court of Franklin County.

So far as the testimony of the Clerk of Courts of Franklin County is concerned, it may be well to particularize which court record was sought to be introduced. The Clerk of Courts of Franklin County performs service for the Court of Appeals and, in addition thereto, to the several rooms and branches of the Court of Common Pleas including the Division of Domestic Relations, which we judicially notice is located at 50 East Mound Street, Columbus, Ohio, in a building known as the Juvenile Detention Home, and in which, we also judicially notice, two judges sit having the qualifications of Judges of the Court of Common Pleas and specifically exercising the powers, duties and functions of (a) domestic relations judge and (b) juvenile judge. The other Common Pleas Judges of Franklin County sit in the courthouse and exercise jurisdiction over the grand jury and with respect to criminal cases, which we shall refer to as the criminal division, and also preside over civil cases, both jury and nonjury types.

From the praecipes filed in this case, it appears that thir-

teen witnesses were subpoenaed, eight for the prosecution and the remaining five on behalf of Julius Reese. The one which relates to the alleged prior conviction is described in the praecipe as follows: "Clerk of Courts Juvenile Division." The subpoena itself contains these words: "Clerk of Courts—Juvenile Div.—50 East Mound Street."

As I see it, there is a lack of clarity in the questioning of Cretta. I have been unable to find any indication of the date and place where the alleged conviction took place. If, as appears, the judgment was rendered in the Juvenile Court of Franklin County with respect to conduct of Cretta as a juvenile, it would not be admissible for any purpose.

But aside from that it is difficult to see how the error, if indeed it was an error, of not admitting the testimony of the Clerk of Courts was in fact prejudicial. As I view the testimony of Julius, he admitted nearly every material fact required for his conviction of the crime of armed robbery. When the testimony of Jack Hatton, the cab driver, and that of Cretta and Julius Reese are compared, there is a striking similarity in the stories told. Julius told a thoroughly unconvincing story of drinking liquor in huge quantities, the obvious purpose being to prove that he was a mere automaton and not a rational person. Julius discredited his own theory, however, by recalling with considerable accuracy the detail as to every material part of the robbery. It is true that Cretta tried to place the blame for originating the robbery upon Julius and that Julius sought to place all the blame on Cretta. This is not new among alleged thieves and robbers and it is not too important who thought of the particular details of the crime. What is crystal clear is that, upon entering the cab, Julius directed the cab driver to take the two of them to 674 Morrill Avenue in Columbus, an address at which he was not then living. For Hatton's version, see R. 16. For Cretta's version, see R. 77. Julius made this quite clear when at R. 137 he testified:

"Q. Now, would you tell the Court in your own words what happened after you got in the cab? A. Well, I told him the address I wanted to go on Morrill, 674 Morrill, and we started out, and I guess we got about two blocks, I am not sure, and Cretta raised up and put her arm around the cab driver's neck. I thought she was lighting a cigarette, and she pulled his neck

back and ordered him to pull up in an alley and told him then to turn the lights out, and all at the same time she handed me her pocketbook and told me to take her pocketbook and told him to hand the money back. I don't know if I took it from his hand or her hand. And she told me to jump out and run.''

At the time that Julius gave this address to the cab driver, it was quite clear that that was not the address where he had been staying for some period prior to the time of the robbery, and when the robbery was completed, he headed for 1222 Franklin Avenue, the home of his aunt and uncle.

It is clear that this court has only such ''jurisdiction as may be provided *by law* to review, affirm, modify, set aside or reverse judgments * * * of courts of record inferior to the Court of Appeals.'' (Emphasis ours.) See Section 6 of Article IV, Constitution of Ohio.

Under the Code of Criminal Procedure, and particularly the provisions of Chapter 2945, Revised Code, we are forbidden to reverse any judgment of conviction upon the ground of mere technical errors of admission or rejection of evidence unless it affirmatively appears that the accused may have been prejudiced by such action. Section 2945.83, Revised Code, reads in part as follows:

''No motion for a new trial shall be granted or verdict set aside, *nor shall any judgment of conviction be reversed in any court because of*:
''* * * *

''(C) *The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby*:
''* * * *

''(E) *Any other cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial.*'' (Emphasis added.)

Even if the alleged conviction of Cretta Reese was for a misdemeanor taking place after she had arrived at the age of eighteen years, I am unable to see how the appellant was prejudiced thereby in view of his testimony, which amounted almost to a complete plea of guilty.

I feel, of course, that counsel for Julius was given complete

freedom to ask Cretta with respect to the alleged misdemeanor and that they failed to specify what they had in mind, failing to lay any proper foundation for rebuttal testimony.

In my opinion, all five of the errors assigned should be overruled, the judgment of the court below should be affirmed, and the cause remanded for further proceedings according to law

(Decided August 14, 1962.)

On Motion to reconsider.

Duffey, P. J. Appellee, state of Ohio, has filed a motion to reconsider the opinion of May 22, 1962. It now contends that the questions to, and the answers of, Cretta Reese were not a sufficient foundation for proof of a prior conviction. The state contends that after the explicit denials by the witness that she had been convicted of a crime, it was necessary for appellant to ask, ''Well, isn't it a fact that on such and such a date you were convicted of such and such a crime?,'' and that this must be followed by the question, ''Well, do you *deny* that on such and such a date you were convicted of such and such a crime?''

As a method of driving home a point through repetition, and as a jury trial technique, this may be commendable. However, we reject the proposition that this technique is a requirement as a matter of law. The two questions asked of the witness were proper. The witness twice explicity denied conviction of a crime. We consider that sufficient. As was pointed out in the previous opinion, the law as to a foundation for proof of a prior conviction must be distinguished from the foundation necessary to prove prior inconsistent statements.

The state also contends that the proffer cannot be supported in fact. The proffer here was a professional statement by appellant's attorney, giving his word as an officer of the court that the testimony or evidence would be what he stated it to be. If accepted by the court and opposing counsel, such a statement is admissible. Neither the court nor opposing counsel have any obligation to accept such a statement, and may insist that the evidence itself be proffered into the record out of the presence of the jury. However, a proffer by professional statement is a common practice, serving to expedite matters and avoid un-

necessary delay. On the record here no objection was made, and the statements of the court and counsel for the state show, in our opinion, a clear acceptance of the proffer. This is not a trial court, and the state cannot now contest the appeal by attempting to establish facts which are not of record.

However, the state makes the astounding proposition that since the clerk of courts is by law also to act as the clerk of the Court of Appeals, this court can take judicial notice of all records in the clerk's possession and, in particular, all the records of criminal proceedings in the Common Pleas Court. No particular span of years is suggested. On this basis we are asked to take judicial notice of the alleged fact that the clerk has no record of a conviction of Cretta Reese. Such a proposition is a patently erroneous view of judicial notice, and is an equally patent attempt to evade the rule limiting review of a law appeal to the record.

The state has attached to its motion a peculiar document which purports to be an affidavit by the clerk of courts on its face and in the verification, but in which the clerk's name was signed by another person. Apparently counsel has forgotten the impropriety of attempting to influence the determination of a cause by reference to matters not of record. The request for "judicial notice," and the attaching of the "affidavit" import a charge of improper conduct by appellant's attorney. If the state wishes to present such a charge, it should do so to the proper authorities, who will, in turn, provide a fair opportunity for refutation. There is no ethical place for such an implication in connection with the present proceedings on the merits of the appeal.

Reference is made to the fact that there is a praecipe and subpoena directed to the clerk of courts, juvenile division. However, the proffer was of the testimony of the Clerk of Courts of Franklin County. A subpoena is not a legal prerequisite to the calling of a witness. There is nothing of record which links that subpoena to the proffer in question.

Finally, the state contends that the *Murdock case* applies only to convictions under state law, that the questions and proffer refer only to a crime, that a crime includes municipal ordinances, and, therefore, the proffer was insufficient. We express no opinion on whether the principle of the *Murdock case*

464

applies to municipal ordinances generally, or to those which are identical in content to the state law, or not at all. The proffer here was of the testimony of the Clerk of Courts of *Franklin County* and not of the Clerk of a Municipal Court.

The motion is overruled.

*Motion overruled.*

DUFFY, J., concurs.
BRYANT, J., dissents.