**John M. RAY, Plaintiff,**

v.

**Earl HUDDLESTON, John Sloan and Frank Summers, Defendants.**

**No. 842.**

United States District Court
W. D. Kentucky,
Bowling Green Division.

Jan. 4, 1963.

Duncan & Allender, Bowling Green, Ky., for plaintiff.

Paul Huddleston, Bowling Green, Ky., for defendants.

SWINFORD, District Judge.

This action for damages is predicated upon an alleged violation of certain federally guaranteed rights of plaintiff. The court directed a verdict in favor of defendants at the close of plaintiff's evidence and the propriety of this ruling is questioned by a motion for a new trial. Plaintiff's evidence must be accepted as true in considering this motion.

On February 1, 1961 the Clinton County War Memorial Hospital Commission employed plaintiff as hospital administrator. A written contract was executed soon after this and plaintiff assumed the duties of administrator. He served without incident in this capacity until January 2, 1962 when he was called before a session of the Clinton County Fiscal Court, the county legislative body, to discuss "problems" of the hospital. At this meeting in plaintiff's presence, a motion was adopted terminating plaintiff's employment at the end of thirty days. On January 9, 1962 the fiscal court employed Frank Summers as Hospital administrator for an indefinite term beginning February 2, 1962.

Plaintiff refused to recognize the action of the fiscal court in dismissing him from employment and elected to stand on the rights he believed were his under his contract with the hospital commission. When Frank Summers reported to the hospital to take over his duties he found that plaintiff was determined to remain in control of the hospital operations. A period ensued during which

plaintiff and Frank Summers wrangled for the loyalties of the hospital staff each giving orders and otherwise attempting to exercise supervision over subordinate employees. The adverse results as to morale and efficiency that would necessarily spring from these circumstances grew to the point that the safety and welfare of the patients was in jeopardy. The county judge was aware of conditions at the hospital as they developed and after about a week he convened a court of inquiry on advice of the county attorney.

A county judge is authorized by section 32 of the Kentucky Code of Practice in Criminal Cases to summon witnesses for examination regarding any public offense which the judge thinks may have been committed in order to ascertain the offender and issue a warrant for his arrest. It is on this provision that the county judge relied in calling for the court of inquiry. The order convening the court recited that certain matters pertaining to the administration of the hospital had been called to the attention of the county court that required action on its part in the interest of conserving the peace. The order was dated February 7, 1962 and directed that court be convened as soon as process might be issued. A subpoena was served upon plaintiff requiring his appearance at 1:00 P.M. that day.

Plaintiff did appear in response to the subpoena and was held in contempt and punished by commitment to jail for six hours. The grounds for the contempt citation were plaintiff's attitude and demeanor at the proceeding and his negative reply to the judge's question as to whether he would turn over the keys and otherwise surrender control of the hospital if ordered to do so by the county court.

The complaint is phrased in terms of a violation of the Constitution of the United States, amendments IV and XIV and the Civil Rights Act (42 U.S.C.A. § 1981 et seq.) and seeks a money judgment against the county judge, county attorney and Frank Summers. The jurisdic-

tion of this court is found in 28 U.S.C.A. § 1343.

As the court explained in its oral opinion in sustaining the motion to dismiss, this action does not permit a review of the merits of the controversy between the various parties that culminated in the court of inquiry. This court is not called upon to decide who has superior claim to the position of hospital administrator. Neither can the court express itself concerning whether plaintiff's conduct before the county judge was contemptuous as a legal matter. Extraordinary circumstances altogether apart from the mere right or wrong of a judge's rulings must be present before he can be held answerable in damages for his judicial acts. It has even been said that corrupt and malicious motive is not even sufficient to make an improper court ruling the basis for a private cause of action against the judge. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871). Were it otherwise, it is not difficult to conceive of a state where judges are constantly embroiled in private controversies with disappointed litigants. The immunity with respect to judicial acts has not been curtailed by the Civil Rights Act. Stift v. Lynch, 7th Cir., 267 F.2d 237 (1959). The plaintiff is therefore compelled to bring his case within some exception to the rule of immunity and he does attempt to establish that the county judge was acting entirely outside of his jurisdiction.

This exception to the rule is of early origin and goes to the definition of the immunity. See Bradley v. Fisher, supra. But that it is of uncertain application is illustrated by numerous statements to the effect that subject matter jurisdiction is itself a matter for judicial determination that is as needful of the protection afforded by immunity as any other. See e. g. Cuiksa v. City of Mansfield, 6th Cir., 250 F.2d 700 (1957); 30A Am.Jur., Judges, § 77.

Subject matter jurisdiction is very often a question as to which there is no clear and compelling answer and

it is not apparent how the interests of the public in immunity of judicial decisions is any less demanding in this field than in any other. This court would shudder to think that the correctness of its own decisions in the often perplexing and hypertechnical context of federal subject matter jurisdiction is at the peril of personal liability. On the other hand, the illustration for the exception to immunity offered in Bradley v. Fisher is convincing that in some cases at least it may have a solid basis. A probate court assuming to administer the criminal laws would surely surrender its immunity but in such a case jurisdiction would be so clearly lacking as to constitute usurpation rather than a mistaken overreaching. This concession to the exception in the rule of immunity may well call for some exploration as to the basis of jurisdiction but it does not allow detailed scrutiny and independent judgment. The public interest in the integrity and finality of court decisions as reflected in the rule of res judicata transcends even such a fundamental component of our jurisprudence as due process. Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). This court is therefore not permitted to undertake a search for error in the county judge's determination on jurisdiction but will only look for some plausible basis for it.

Section 32 of the Kentucky Criminal Code gives the judge power to call witnesses to determine matters relating to offenses that may have been committed. There is ample evidence to show that the conduct of plaintiff in refusing to relinquish control of the hospital may have violated one or more of the criminal laws. Any further inquiry would seem to constitute an intrusion into the area protected by immunity, the questions of right or wrong in the application of the statute. This court does not decide the question of subject matter jurisdiction de novo but must be content with the assurance that it was not decided in a clearly wrong direction. Johnson v. MacCoy, 9th Cir., 278 F.2d 37 (1960).

Inasmuch as all of the acts which plaintiff complains of were incidental to the actions of the county judge under section 32 of the Criminal Code and therefore privileged by the immunity rule, this court can see no basis of liability. The other defendants were acting with the county judge to aid him in conduct which was legal and cannot be found liable independently of him.

Plaintiff's motion for a new trial will be overruled by an order entered this day.